1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8    BRIAN J. C.,

9                            Plaintiff,              Case No. C24-5294-SKV

10          v.                                       ORDER AFFIRMING THE
                                                     COMMISSIONER'S DECISION
11   COMMISSIONER OF SOCIAL SECURITY,

12                           Defendant.

13

14          Plaintiff seeks review of the denial of his application for Supplemental Security Income

15   (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the

16   administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the

17   Commissioner's final decision and **DISMISSES** the case with prejudice.

18                                     **BACKGROUND**

19          Plaintiff was born in 1974, has a high school education, and has worked as a cook helper.

20   AR 1649.  Plaintiff was last gainfully employed in May 2014.  AR 1630.

21          On June 18, 2014, Plaintiff applied for benefits, alleging disability as of June 2014.  AR

22   1627.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff

23   requested a hearing.  AR 1627.  After a hearing an ALJ denied Plaintiff's claim in a decision

1    dated September 5, 2017.  AR 1627.  The case was appealed to the district court and remanded to

2    the same ALJ, who after a second hearing denied Plaintiff's claim in a decision dated December

3    27, 2019.  AR 1627.  Plaintiff appealed again, and the decision was affirmed by the District

4    Court but remanded to a new ALJ by the Ninth Circuit based on an Appointments Clause

5    challenge.  AR 1627.  The new ALJ conducted a hearing on September 26, 2023, and issued a

6    decision finding Plaintiff not disabled.  AR 1627.

7                                   **THE ALJ'S DECISION**

8         Utilizing the five-step disability evaluation process,[1] the ALJ found:

9         **Step one**:  Plaintiff has not engaged in substantial gainful activity since May 9, 2014.

10        **Step two**:  Plaintiff has the following severe impairments: bipolar disorder, social anxiety
11        disorder, major depressive disorder, PTSD, and personality disorder.

12        **Step three**:  These impairments do not meet or equal the requirements of a listed
          impairment.[2]

13        **Residual Functional Capacity**:  Plaintiff can perform a full range of work at all
14        exertional levels, with the following limitations: he is able to understand, remember, and
          apply only short, simple instructions; perform routine, predictable tasks; not in fast paced,
15        production type environment; make simple decisions; with exposure to occasional,
          routine workplace changes; in a setting with no interaction with the general public,
16        occasional interaction with co-workers and supervisors, but with no team oriented
          activity.

17        **Step four**:  Plaintiff cannot perform past relevant work.

18        **Step five**:  As there are jobs that exist in significant numbers in the national economy that
          Plaintiff can perform, Plaintiff is not disabled.

19

20   AR 1630-49.

21        The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

22   Commissioner's final decision.  AR 849.  Plaintiff appealed the final decision of the

23
     _____
     [1] 20 C.F.R. §§ 404.1520, 416.920.
     [2] 20 C.F.R. Part 404, Subpart P., App. 1.

     ORDER AFFIRMING THE COMMISSIONER'S
     DECISION - 2

1  Commissioner to this Court.  Dkt. 8.  The parties consented to proceed before the undersigned

2  Magistrate Judge.  Dkt. 4.

3  ## LEGAL STANDARDS

4  Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

5  security benefits when the ALJ's findings are based on harmful legal error or not supported by

6  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

7  2005).  As a general principle, an ALJ's error may be deemed harmless where it is

8  "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

9  1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

10  determine whether the error alters the outcome of the case." *Id.*

11  Substantial evidence is "more than a mere scintilla.  It means - and means only - such

12  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

13  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

14  747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

15  conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

16  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

17  as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

18  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

19  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

20  must be upheld.  *Id.*

21  ## DISCUSSION

22  Plaintiff argues the ALJ erred by improperly evaluating Plaintiff's testimony, improperly

23  evaluating lay witness testimony, not finding a severe physical impairment at step two, and

1    improperly evaluating the medical evidence.  Dkt. 16 at 3-18.  The Commissioner argues the

2    ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be

3    affirmed.  Dkt. 23 at 2-18.  Because Plaintiff applied for benefits before March 27, 2017, the

4    regulations set forth in 20 C.F.R. § 404.1527 apply to the ALJ's consideration of medical

5    opinions and non-medical testimony.

6         **A.     The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

7         The ALJ considered Plaintiff's testimony and discounted it based on (1) inconsistency

8    with the medical record, (2) minimal treatment for his mental health conditions, (3) Plaintiff's

9    ongoing efforts to find work, and (4) inconsistency with his activities of daily living.  AR 1637-

10   44.  Plaintiff argues the ALJ misevaluated his testimony by ignoring abnormal clinical findings,

11   finding inconsistencies where there were none, and incorrectly evaluating his activities of daily

12   living.  Dkt. 16 at 16-18.

13        Plaintiff testified at hearings in 2016, 2019, and 2023.  AR 1636-37.  He stated that he

14   was not taking medications to manage his mental health symptoms; he had anxiety and had panic

15   attacks when speaking with others; he talked to himself, and sometimes saw things; he could not

16   work because of his mental health symptoms and triggers; but he could take care of household

17   chores and grocery shopping, though sometimes it was a struggle.  AR 1636-37.

18        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

19   discount a claimant's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

20   The Court finds that the ALJ's reasons are clear and convincing, and strongly supported by the

21   record, for the following reasons.

22        Plaintiff argues that the ALJ misapplied Ninth Circuit law in rejecting his testimony as to

23   the severity of his symptoms and limitations based solely on the absence of objective evidence,

1    in contravention of *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  Dkt. 16 at 16-

2    17.  The Ninth Circuit has labeled the very argument posed by Plaintiff as a "misreading" of its

3    precedent.  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).  In *Smartt,* the Ninth Circuit

4    reiterated "an ALJ may not 'reject a claimant's subjective complaints based solely on a lack of

5    medical evidence to fully corroborate the alleged severity of the pain.'"  *Id.* (quoting *Burch v.*

6    *Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005)).  However, the *Smartt* court held that "[w]hen

7    objective medical evidence in the record is inconsistent with the claimant's subjective testimony,

8    the ALJ may indeed weigh it as undercutting such testimony." *Id.*  The court further reasoned

9    that an ALJ is not required "to simply accept a claimant's subjective symptom testimony

10   notwithstanding inconsistencies between that testimony and the other objective medical evidence

11   in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in

12   a case." *Id.* at 499 (noting that "the standard isn't whether [the] court is convinced, but instead

13   whether the ALJ's rationale is clear enough that it has the power to convince").  Here, under

14   *Smartt*, the ALJ was permitted to discount Plaintiff's testimony to the extent that it was undercut

15   by inconsistent medical evidence, which it was for the reasons advanced by the ALJ.  *Id.* at 498.

16   Moreover, as set forth below, the ALJ relied on other reasons in addition to the inconsistent

17   medical findings.

18       Plaintiff further argues that the ALJ erred by only providing a selective summary of the

19   medical evidence and ignoring "numerous abnormal clinical findings in the record", referring the

20   Court to his medical opinion arguments.  Dkt. 16 at 16-17, 17 n.18.  As discussed below, the ALJ

21   properly discounted the medical opinions of Plaintiff's various providers.  Although an ALJ may

22   not discount a claimant's allegations *solely* based on lack of objective corroboration, an ALJ

23   does not err in considering the extent to which the objective record supports the claimant's

allegations.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").  The ALJ provided a thorough summary of Plaintiff's medical record, before linking this record to the portions of Plaintiff's testimony he discounted.  *See* AR 1637-44.  For example, Plaintiff's MSE findings which show good recent and remote memory, normal fund of knowledge, and average intellectual functioning contradict his testimony that he is unable to work "because of poor judgment, poor memory, and poor comprehension."  AR 448, 682, 1462, 1637

Plaintiff next argues that the ALJ erred in finding that Plaintiff's minimal treatment indicated that his symptoms were less limiting as alleged because "the record makes it abundantly clear that [Plaintiff] is afraid of taking medications."  Dkt. 16 at 17; Dkt. 27 at 7 (citing AR 1690).  Plaintiff supports this assertion with a citation to the ALJ asking Plaintiff if he was "hesitant or scared about medications" to which Plaintiff replied, "I'm not a pill popper."  AR 1690.  This citation does not support Plaintiff's argument.  Moreover, the ALJ considered Plaintiff's alleged fear of taking medications and discounted it because Plaintiff had "regular visits with his PCP" and did take "medications for his medical conditions, such as inhalers and blood pressure medications."  AR 1643.  Additionally, this argument is contradicted by the Plaintiff's own testimony that he was not currently taking medications because he was having difficulty getting a referral to a psychiatrist because of low staffing at Behavioral Health Resources ("BHR").  AR 1680.

Plaintiff also argues the ALJ erred by finding that Plaintiff attended therapy only because the court required him to.  Dkt. 16 at 17 (citing *Garrison v. Colvin,* 759 F.3d 995, 1018 n.24 (9th

1   Cir. 2014)).  Plaintiff cites no portion of the record which contradicts the ALJ's finding.  The

2   ALJ supported the finding that "[Plaintiff] attended much of his therapy because required by the

3   court or to keep his benefits" with citations to Plaintiff's own statements.  AR 1643 (citing AR

4   432, 773-74, 780).  In 2014 on intake Plaintiff indicated "'I am here because I am court

5   ordered.'"  AR 432.  When he began therapy in December 2016, Plaintiff was quoted on intake

6   as being there because he was "'told by DSHS to to[sic] obtain a mental assessment in order to

7   keep my cash benefits.'"  AR 773.  Plaintiff testified that counseling helped relieve some of his

8   mental health symptoms.  AR 1681.

9       Additionally, the ALJ found that Plaintiff's "failure to treat his allegedly disabling mental

10  health symptoms beyond therapy, going off medications when he tried them, suggests that his

11  symptoms are not as limiting as alleged."  AR 1643.  Plaintiff does not address this portion of the

12  ALJ's reasoning.  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

13  testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

14  2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Tommasetti v.*

15  *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider . . . in weighing a

16  claimant's credibility . . . unexplained or inadequately explained failure to seek treatment or to

17  follow a prescribed course of treatment[.]") (internal quotation marks omitted).  It was

18  reasonable of the ALJ to conclude based on this evidence that Plaintiff's functioning was "not as

19  limiting as alleged, as if it were, it is reasonable to conclude that [Plaintiff] would willingly

20  engage in treatment so as to improve his symptoms and functioning."  AR 1643; *see also*

21  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment

22  successfully relieving symptoms can undermine a claim of disability.").

23

1    Finally, an ALJ may reject a plaintiff's testimony based upon daily activities that either

2    contradict his testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495

3    F.3d 625, 639 (9th Cir. 2007).  Though "the mere fact that a plaintiff has carried on certain daily

4    activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

5    any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d

6    1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

7    ("disability claimants should not be penalized for attempting to lead normal lives in the face of

8    their limitations") (citations omitted).

9    The ALJ found that the inconsistencies in the record undermined Plaintiff's subjective

10    symptom complaints.  AR 1643.  Neither Plaintiff's opening nor reply brief addresses the ALJ's

11    reasoning around his continuing to look for work, which alone would be sufficient to uphold the

12    ALJ's decision.  AR 1643-44; *see also Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1162 (9th

13    Cir. 2008) (reasoning that even if an ALJ errs in a portion of his reasoning, such error is harmless

14    where "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately

15    supported by substantial evidence in the record.") (emphasis in original).  The ALJ found that

16    Plaintiff's testimony that he only looked for work as a condition of staying at the Salvation Army

17    was contradicted by reports he made to his counselor that in 2017 he was applying to two jobs

18    per week, and he was tired of waiting for social security, but his attorney advised him not to look

19    for work.  AR 1643 (citing AR 812, 826).  At the 2019 hearing Plaintiff denied ever saying that

20    his lawyer told him to look for work.  AR 1863.  The ALJ found that Plaintiff had motivation to

21    deny looking for work, as "the statement suggests that the claimant felt himself capable of

22    working."  AR 1644.  In evaluating a Plaintiff's testimony, the ALJ may consider inconsistencies

23    between the Plaintiff's testimony and conduct, such as continuing to look for work.  *Molina*, 674

1    F.3d at 1112; *see also Lewis v. Berryhill*, 722 F. App'x 660, 662 (9th Cir. 2018) (holding that the

2    ALJ properly rejected testimony where there were inconsistencies between plaintiff's allegation

3    of disability and statements that he continued looking for work after the alleged onset of

4    disability); *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)

5    (finding the ALJ properly considered evidence of plaintiff's attempts to find employment in

6    discounting claimant's testimony).

7          In discounting Plaintiff's physical symptom complaints, the ALJ considered Plaintiff's

8    various activities, which included moving furniture as a volunteer.  AR 1644.  Plaintiff argues

9    the ALJ "failed to fairly consider the evidence which shows that [Plaintiff] did little lifting when

10   volunteering with a ministry."  Dkt. 16 at 17.  But the ALJ considered the amended notes from

11   Plaintiff's counselor that Plaintiff did little lifting when volunteering and discounted it as the

12   ALJ found the "contemporaneous treatment note more convincing than a subsequent claim by

13   the [Plaintiff], made to a different therapist and after the initial report was referenced at a

14   hearing[,]" as "[t]he subsequent claim was clearly designed to support the claimant's claims of

15   physical limitations."  AR 1644.  Plaintiff's recitation of information in the record and stating

16   that the ALJ did not fairly consider it is not a cognizable legal argument.  The ALJ did not err in

17   finding Plaintiff's volunteering activities contradicted his claims of disabling back pain.  *See*

18   *Molina*, 674 F.3d at 1113 (holding that an ALJ may discredit a plaintiff's activities based on

19   "daily activities 'to the extent that they contradict claims of a totally debilitating impairment,'

20   even if 'those activities suggest some difficulty functioning'")

21         Furthermore, the ALJ considered evidence of daily activities beyond lifting furniture.

22   Despite testifying that he can only sit for six minutes and walk for nine or ten minutes, AR 1687,

23   Plaintiff reported that he could do "household chores, go grocery shopping, prepare simple

1   meals, and do laundry[,]" that "his hobbies included fixing things, playing drums/guitar,

2   cleaning, exercising, sightseeing, and reading." AR 1644.  It was reasonable of the ALJ to

3   conclude that these activities contradicted plaintiff's testimony of debilitating pain.  The ALJ

4   further found that Plaintiff's mental health complaints were contradicted by his testimony that he

5   can "use public transportation, handle his own finances, and spend time with others regularly[]"

6   and "maintained a structured schedule while attending college." AR 1644.  Accordingly, the ALJ

7   did not err in discounting Plaintiff's subjective symptom complaints.

8   **B.    The ALJ Did Not Err in Evaluating Lay Testimony**

9       Contrary to Plaintiff's argument otherwise, the ALJ provided germane reasons for

10  rejecting C.H.'s statements.  *See* Dkt. 16 at 18.  The ALJ found her opinion contradicted by her

11  description of Plaintiff as polite and cooperative.  AR 1265.  Additionally, C.H.'s statements

12  were similar to Plaintiff's own, so the ALJ's reasoning regarding Plaintiff's testimony applied

13  with equal force to C.H.'s testimony.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d

14  685, 694 (9th Cir. 2009) ("the ALJ provided clear and convincing reasons for rejecting

15  [plaintiff's] own subjective complaints, and because [the lay witness's] testimony was similar to

16  such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay

17  witness's] testimony").

18  **C.    The ALJ did not err at Step Two**

19      In practice, "the step-two inquiry is a de minimis screening device to dispose of

20  groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "[Step two] is not

21  meant to identify the impairments that should be taken into account when determining the RFC."

22  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  Accordingly, any failure to classify

23  an impairment as non-severe at step two is harmless if the ALJ subsequently considered the

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 10

1   limitations posed by that impairment at a later step in the inquiry. *See McGuire v. Kijakazi*, No.

2   20-35898, 2021 WL 5861284, at *1 (9th Cir. Dec. 7, 2021) (finding that the ALJ's error at step

3   two was harmless since the ALJ considered the non-severe impairment later in the inquiry);

4   *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021)

5   ("Although an error at step two may be considered harmless where the ALJ moves to the next

6   step in the analysis, the decision must reflect that the ALJ considered any limitations posed by

7   the impairment at either step four or step five.").

8         In this case, the ALJ found that Plaintiff suffered from severe mental health impairments,

9   but no severe medically determinable physical impairments. AR 1630. The ALJ held that

10  Plaintiff's degenerative disc disease of the lumbar spine was not severe, as evidence did not

11  show the impairment significantly affected Plaintiff's longitudinal functioning. AR 1631. More

12  specifically, the ALJ found that the only medical opinions which supported a more severe

13  impairment at step-two came from doctors whose opinion he properly discounted, as discussed

14  below, and that the medical record showed minimal treatment, and improvement with treatment.

15  AR 1631-34.

16        To argue error, Plaintiff summarizes the medical evidence of Plaintiff's back injury

17  without linking it to specific error in the ALJ's decision. Dkt. 16 at 3-4. In June 2016 Plaintiff

18  reported to the emergency room following a back strain. AR 669. Subsequently, spinal imaging

19  showed chronic bilateral L5 spondylolysis, but no spondylolisthesis, stenosis, or nerve root

20  compression. AR 686. After a month of physical therapy in 2017 Plaintiff "reported 0/10 pain

21  to his low back" and subsequently stopped attending physical therapy. AR 751-52. Plaintiff

22  testified that doctors would not prescribe medication to manage his back pain. AR 1632. The

23  ALJ did not err in discounting the summarized medical opinions, and Plaintiff has failed to show

1    harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party

2    challenging an administrative decision bears the burden of proving harmful error) (citing

3    *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)).

4         **D.    The ALJ Did Not Err in Assessing Certain Medical Opinion Evidence**

5              Plaintiff challenges the ALJ's assessment of certain medical opinions, each of which the

6    Court will address in turn.

7              In cases filed before March 2017, more weight should be given to the opinion of a

8    treating doctor than to a non-treating doctor, and more weight to the opinion of an examining

9    doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

10   Where not contradicted by another doctor, a treating or examining doctor's opinion may be

11   rejected only for clear and convincing reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

12   1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be

13   rejected without "'specific and legitimate reasons' supported by substantial evidence in the

14   record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502

15   (9th Cir. 1983)). "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the

16   medical evidence." *Tommasetti*, 533 F.3d at 1041 (citing *Andrews*, 53 F.3d at 1039-40 ("The

17   ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

18   resolving ambiguities.")).

19                        *1.    Other Medical Evidence*

20             In conjunction with his challenges to the ALJ's evaluation of medical opinions,

21   Plaintiff's opening brief summarizes various medical records and conclusorily states "the ALJ

22   errs by improperly attempting to act as his own medical expert." Dkt. 16 at 11-12. The

23

1  Commissioner argues that this "summary of the medical evidence capped with the conclusory

2  claim of error" is insufficient to establish legal error.  Dkt. 23 at 18.

3        The Court agrees.  This Order focuses on the errors explicitly identified in Plaintiff's

4  briefing and does not address Plaintiff's summaries of evidence for which an argument has not

5  been adequately developed because summarizing facts without providing analysis or legal

6  argument is not enough to demonstrate harmful error.  *See Putz v. Kijakazi*, 2022 WL 6943095,

7  at *2 (9th Cir. Oct. 12, 2022) (noting that where plaintiff, who was represented by the same

8  counsel as counsel in this case, simply "list[ed] numerous clinical findings, unaccompanied by

9  argument, intended to corroborate testimony the ALJ discounted," plaintiff waived "any

10  argument based on th[o]se findings" because he failed to present an adequate argument).  It is

11  not this Court's job to "manufacture arguments where none is presented." *Indep. Towers of*

12  *Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

13        Here, Plaintiff has challenged the ALJ's evaluation of ten medical opinions, along with

14  the ALJ's evaluation of his testimony from three hearings and two function reports, and the

15  ALJ's evaluation of a lay witness report.  Neither Plaintiff's arguments regarding the ten

16  opinions, testimonial statements, nor his four-page summary of evidence make any attempt to

17  meaningfully explain or delineate which portions, if any, of his summary of the medical evidence

18  apply to his challenges or how the summarized evidence undermines the ALJ's findings.

19        Moreover, as noted in its discussion of each of the respective challenged medical

20  opinions and testimony, Plaintiff has largely failed to provide adequate explanation or to engage

21  in any meaningful manner with the reasons and record citations proffered by the ALJ with

22  respect to the challenged evidence.  As a result, in many instances, the Court is unable and

23  unwilling to disturb the ALJ's findings since it is not the Court's job to develop Plaintiff's

arguments for him.  *See Putz*, 2022 WL 6943095, at *2 (holding that where claimant, who was represented by the same counsel as the instant case, gave "short shrift" to her arguments, failing to "actually argue" any of her points beyond "bare assertions of error," he waived the arguments) (citing *Indep. Towers*, 350 F.3d at 929); *accord Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007).  These same deficiencies occur repeatedly with nearly every challenged opinion or issue throughout Plaintiff's briefs.

Finally, the Court is compelled to note that Plaintiff's counsel has already been admonished on numerous occasions, including in this very case, regarding the deficiencies that exist in his current briefing.  *See, e.g.,* AR 925; 1756-57; *Williams v. Berryhill*, 728 F. App'x 709, 711 (9th Cir. 2018) (finding Plaintiff's challenge to ALJ's evaluation of medical opinion was insufficient where she failed to explain why the ALJ's finding was erroneous); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) (finding that Plaintiff failed to argue the issue on appeal as "specifically and distinctly" as required to invoke the Ninth Circuit's review); *St. Clair v. Saul*, 776 F. App'x 447 (9th Cir. 2019) (finding Plaintiff failed to develop argument adequately where he failed to identify any specific errors in the ALJ's evaluation of the medical opinions); *Frost v. Berryhill*, 727 F. App'x 291, 295 (9th Cir. 2018) (refusing to review Plaintiff's "undeveloped" argument); *Romo v. Colvin*, No. 14-CV-419-BJR-BAT, 2015 WL 64908, at *4 (W.D. Wash. Jan. 5, 2015) (finding that Plaintiff failed to address all of the ALJ's reasons regarding the consistency of a medical opinion); *Dinsmore v. Colvin*, No. C15-1129-MJP, 2016 WL 4523853, at *2 (W.D. Wash. Aug. 30, 2016), *aff'd sub nom. Dinsmore v. Berryhill*, 727 F. App'x 437 (9th Cir. 2018) (finding that Plaintiff failed to identify or explain how evidence in fact undermined the ALJ's finding of inconsistency between two medical opinions); *Dawn D. v. Comm'r of Soc. Sec.*, No. C22-1001-DWC, 2023 WL 4487671, at *5

(W.D. Wash. July 12, 2023) (finding that Plaintiff's lack of clarity and delineation in challenging five medical opinions "very clearly f[ell] short of appellate review requirements"); *Kimberly D. v. Comm'r of Soc. Sec.*, No. C22-5588-BAT, 2023 WL 3001405, at *4 (W.D. Wash. Apr. 19, 2023) (same); *Meagan B. v. Comm'r of Soc. Sec.*, No. 23-5794 MLP, 2024 WL 1617953, at *3 (W.D. Wash. Apr. 15, 2024) (same).

### 2.    *Physical Health Opinions*

Plaintiff argues the ALJ erred in discounting four medical opinions as to Plaintiff's physical limitations by summarizing the treating record from the physical examinations but not addressing the ALJ's reasoning in rejecting these opinions, and conclusorily stating "none of the ALJ's reasons are legitimate" and "the ALJ fails to fully account for all of the objective findings in the record which support the treating and examining physicians' medical opinions." Dkt. 16 at 11.  The Court nonetheless looks to the ALJ's reasoning for each opinion in turn.

### i.    *Dr. Davenport*

The ALJ considered the opinion of consultive medical examining doctor W. Daniel Davenport, M.D., at step-two, but discounted it as (1) unsupported by the clinical exam, and (2) inconsistent with the record as a whole.  AR 1631-32.

Dr. Davenport assessed various physical limitations based on Plaintiff's Achilles tendonitis.  AR 523.  The ALJ discounted this opinion as Dr. Davenport's exam showed only a limited range of motion and no limitation in lower extremity functioning, nor did Plaintiff complain of lower extremity limitations in his testimony, instead focusing on the problems presented by his lower back pain.  AR 1631.  The ALJ further discounted this opinion as subsequent evaluations showed that the impairment did not last for twelve months, and evaluations consistently showed that Plaintiff had no abnormality in gait.  AR 1631 (citing 529,

662, 700, 746, 1298, 1947, 1950, 2020).  The ALJ provided clear and convincing reasons for discounting the opinion of Dr. Davenport, supported by substantial evidence.  Accordingly, he did not err in discounting this opinion.

<em>ii.      Nurse Armstrong</em>

The ALJ considered the opinion of Nancy Armstrong, ARNP, at step-two and discounted it as (1) unsupported by the clinical findings, (2) inconsistent with the medical record, and (3) inconsistent with Plaintiff's activities of daily living.  AR 1632-33.

At a November 2016 DSHS exam Ms. Armstrong opined that Plaintiff was limited to sedentary work based on his back pain.  AR 706.  Plaintiff reported that he injured his back in June 2016.  AR 2044.  The ALJ found that Ms. Armstrong's opinion was unsupported by her exam findings, which were largely normal, including normal movement in all extremities and gait, though Ms. Armstrong did note that Plaintiff had radiating back pain and limited back mobility.  AR 700, 707.  Substantial evidence does not support the ALJ discounting Ms. Armstrong's opinion as unsupported.  But the ALJ also noted numerous subsequent examinations which showed normal findings and found that Ms. Armstrong's opinion was inconsistent with these findings.  AR 1633 (citing AR 529 (showing a fully normal range of motion after suffering a head injury while intoxicated), AR 1298 (exam showing normal gait, pain rating a 3/10), AR 1303 (showing normal sensation, range of motion, stability, coordination with moderate tenderness), AR 1947 (physical exam showing entirely normal findings), AR 1950 (physical exam showing entirely normal findings aside from a rash), AR 2020 (physical exam showing normal range of motion, coordination, station, and gait.)).  The ALJ further found that Plaintiff's "demonstrated ability to handle all of his personal care without problems, play guitar, engage in sightseeing, and handle most activities of daily living independently" further

1    contradicted Ms. Armstrong's opinion.  AR 1633 (citing AR 492, 1515).  It was reasonable for

2    the ALJ to conclude that these subsequent normal physical exam findings and activities of daily

3    living contradicted Ms. Armstrong's opinion that Plaintiff was limited to sedentary work.

4    Accordingly, the ALJ did not err in rejecting Ms. Armstrong's opinion.

5               iii.        Dr. Sylwester

6          The ALJ considered the opinion of consultative medical examiner Patricia Sylwester,

7    M.D., at step-two and discounted it as unsupported by the medical examination.  AR 1633.  Dr.

8    Sylwester's exam showed normal gait, and normal motor functioning with a mildly decreased

9    range of motion.  AR 1633.  Plaintiff has not provided the Court with an argument that shows

10   error in this reasoning.  Contradictions between a medical source's opinion and her own clinical

11   notes and observations is an appropriate fact for an ALJ to consider.  20 C.F.R. §§

12   404.1527(c)(3-4), 416.927(c)(3-4); *Valentine*, 574 F.3d 685 at 692–93.

13              iv.        Dr. Deem

14         The ALJ considered the opinion of consultative medical examiner Shirley Deem, M.D. at

15   step-two and discounted it as (1) unsupported by the clinical examination findings, and (2) the

16   medical record as a whole.  AR 1633.  The only abnormal finding in Dr. Deem's exam was that

17   Plaintiff "did seem more comfortable sitting sideways in the chair."  AR 2020.  Otherwise,

18   Plaintiff had normal gait and range of motion.  The ALJ did not err in discounting this opinion

19   for this reason.

20          3.      *Mental Health Opinions*

21              i.        *State Agency Psychologists*

22         Plaintiff argues that the ALJ erred by giving substantial weight to the opinions of non-

23   examining sources Diane Fligstein, Ph.D., John Gilbert, Ph.D., Mary Koehler, M.D., and Carol

1   Moore, Ph.D.  Dkt. 16 at 11.  "While an ALJ must support the decision to reject portions of a

2   physician's opinion, the ALJ is not obligated to explain why he or she accepted that opinion."

3   *Corthion v. Berryhill*, 757 F. App'x 614, 617 (9th Cir. 2019) (citing *Turner*, 613 F.3d at 1223).

4   Opinions of non-treating or non-examining physicians may be entitled to greater weight than the

5   opinions of examining sources when the opinions are consistent with independent clinical

6   findings or other evidence in the record.  *See* 20 12 C.F.R. §§ 404.1527(c)(l)-(2), 416.927(c)(l)-

7   (2); *Thomas*, 278 F.3d at 957.  That is the case here, as the ALJ found that the opinions of Drs.

8   Fligstein, Gilbert, Koehler, and Moore were consistent with the record evidence.  *See* AR 1644-

9   45.

10                              ii.        *Dr. Bowes*

11          Tasmyn Bowes, Psy.D., examined Plaintiff in May 2014 and completed a DSHS form

12  opinion describing his symptoms and some moderate and marked limitations in cognitive and

13  social functioning.  AR 1358-65.  The ALJ considered the opinion of Dr. Bowes and discounted

14  it as (1) unsupported by the examination findings, and (2) inconsistent with the medical record.

15  AR 1645.  Plaintiff argues the ALJ erred by equating Plaintiff's ability to communicate in a

16  clinical setting with the ability to communicate and maintain appropriate behavior in a

17  competitive work environment.  Dkt. 16 at 5-6.

18          The ALJ discounted Dr. Bowes's opinion as both unsupported by her examination of

19  Plaintiff and inconsistent with the medical evidence in the record.  Plaintiff does not challenge

20  the ALJ's inconsistency finding.  Specifically, the ALJ pointed to evidence which showed

21  Plaintiff had no deficit in concentration or memory five months after Dr. Bowes's evaluation.

22  AR 1645.  He properly linked this evidence to Dr. Bowes's opinion that Plaintiff had moderate

23  limitation in the ability to understand, remember, and persist in tasks by following very short and

1    simple instructions, further pointing to MSE findings which showed Plaintiff could follow a

2    three-step task, with normal findings in memory, fund of knowledge, and abstract thought.  AR

3    1645 (citing AR 448).

4          The ALJ further discounted Dr. Bowes's opinion that plaintiff had "marked limitations in

5    the ability to communicate and perform effectively in a work setting; maintain appropriate

6    behavior; complete a normal workday/workweek without interruptions" as unsupported by

7    Plaintiff's "presentation and performance."  AR 1645.  The ALJ specifically pointed to Dr.

8    Bowes's notes that Plaintiff "engaged appropriately through the interview, with normal speech,"

9    that Plaintiff had "no difficulty following conversation," his "[h]ygiene and manner of dress was

10   appropriate to the office setting and weather conditions of the day," his "speech was in normal

11   range, he maintained eye contact, and had no abnormalities of movement. AR 447.  While the

12   Plaintiff's interpretation of this evidence as a difference in setting is reasonable, it is not the only

13   one.  The ALJ provided specific and legitimate reasons for discounting the opinion of Dr.

14   Bowes.  Accordingly, the ALJ did not err in discounting this opinion evidence.

                            *iii.*        *Dr. Burdge*

16         The opinion of Dr. Bowes was reviewed by Aaron Burdge, Ph.D., who agreed with her

17   opinion.  AR 457.  The ALJ considered the opinion of Dr. Burdge and discounted it as (1) Dr.

18   Burdge did not examine Plaintiff, and (2) two of the three opinions Dr. Burdge reviewed were

19   from "well before the alleged disability onset date."  AR 1645.  Plaintiff argues the ALJ erred

20   because "none of the other evidence is significantly different from Dr. Bowes's opinion."  Dkt.

21   16 at 6.  This is not a legal argument, and as explained above the ALJ did not err in discounting

22   the opinion of Dr. Bowes.  Accordingly, the ALJ did not err in discounting the opinion of Dr.

23   Burdge.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 19

1

*iv.       Dr. Wingate*

2       The ALJ considered opinions of Dr. Wingate from October 2014 and July 2018, and

3  found her moderate limitations to be largely consistent with the RFC, though he discounted the

4  marked limitations she assessed in both exams as (1) overly reliant on Plaintiff's subjective

5  symptom complaints, (2) unsupported by the clinical exams, and (3) inconsistent with the overall

6  medical record.  AR 1645-46.  Plaintiff argues the ALJ erred because there is no evidence that

7  Dr. Wingate "relied *primarily* on [Plaintiff's] self-reported symptoms."  Dkt. 16 at 7.

8       Plaintiff misstates the ALJ's reasoning.  The ALJ discounted Dr. Wingate's opinions as

9  to marked limitations in his ability "to perform activities within a schedule, maintain regular

10  attendance, perform effectively in a work setting, and complete a normal workday without

11  interruptions from psychologically based symptoms" as necessarily reliant on Plaintiff's

12  subjective symptom complaints.  AR 1645.  An ALJ may reject a physician's opinion "if it is

13  based 'to a large extent' on a claimant's self-reports that have been properly discounted as

14  incredible."  *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169

15  F.3d 595, 602 (9th Cir. 1999)).  As discussed above the ALJ properly discounted Plaintiff's

16  symptom testimony, including his finding that Plaintiff "at times minimized his capacity in

17  testimony, actually challenging his own reports of functioning as reported to providers[.]"  AR

18  1646.  While "the rule allowing an ALJ to reject opinions based on self-reports does not apply in

19  the same manner to opinions regarding mental illness[,]" the ALJ did not err in doing so here.

20  *Buck*, 869 F.3d at 1049.

21       As to Dr. Wingate's opinions that Plaintiff had marked limitations in his ability to

22  communicate and perform effectively in a work setting and maintain appropriate behavior, the

23  ALJ discounted these opinions as unsupported by the doctor's examination findings, which noted

1    he was cooperative in the first exam and pleasant and had a "nervous joking manner" in the

2    second exam.  AR 681, 1361.  Dr. Wingate did note some abnormal MSE findings on her initial

3    exam in Plaintiff's abstract thought and insight and judgement based on Plaintiff's responses that

4    "You can't judge a book by It's[sic] cover" meant "Can't judge what's unseen" and that he

5    would "Yell like a girl" if he were the first to see a fire, as well as some limitation in

6    concentration in her second exam of Plaintiff.  AR 682.  But it was not unreasonable for the ALJ

7    to determine that these findings alone were insufficient to support Dr. Wingate's opinion.

8                                    *v.*        *Dr. Stamschror*

9            The ALJ considered the opinion of consultative psychiatric examining doctor Justin

10   Stamschror, M.D., and discounted it as (1) unsupported by the clinical examination findings, (2)

11   inconsistent with the medical record, and (3) overly reliant on Plaintiff's self-reports.  AR 1647.

12   Plaintiff argues that this is an error, conclusorily stating that "Dr. Stamschror discussed clinical

13   findings which support his opinions, his opinions are consistent with the many abnormal clinical

14   findings of [Plaintiff's] treating therapists, and his opinions are consistent with the findings and

15   opinions of every examining psychologist."  Dkt. 16 at 11.

16           The ALJ discounted Dr. Stamschror's opinion that Plaintiff had no capacity to work with

17   others as unsupported by his examination which did "not report inappropriate behavior, at worst

18   describing the claimant's interpersonal style as 'somewhat juvenile' but otherwise the claimant

19   appeared spontaneous and genuine, and his interpersonal style was conversant and friendly." AR

20   1647 (citing AR 1991).  The ALJ also discounted the opinion that Plaintiff could not perform

21   simple and repetitive tasks given his good performance on MSE's with various doctors.  AR

22   1647 (citing AR 448, 682, 1361-62, 1991.)  Again, the ALJ discounted the remaining limitation

23   opinions as reliant on Plaintiff's self-reports, which they necessarily were.  AR 1647.  As

1    discussed above, the ALJ does not err where he discounts medical opinions based on self-reports

2    that have been properly discounted as incredible.  *Tommasetti*, 533 F.3d at 1041

3              *vi.*        *LMHC Richards*

4         The ALJ considered the opinion of treating counselor Nathaniel Richards, MA, LMHC

5    and discounted it as (1) inconsistent with his activities of daily living, and (2) inconsistent with

6    medical record.  AR 1646.  Plaintiff argues the ALJ erred because he "failed to acknowledge that

7    Mr. Richard's opinions are consistent with his many abnormal clinical findings."  Dkt. 16 at 10.

8         Mr. Richards's opinion is the only opinion of a treating mental health provider available

9    in the record.  Lisa J. Caldwell, LMHCA, MHP, Plaintiff's primary counselor through BHR from

10   2016 to February 2018, did not provide a medical opinion for Plaintiff's social security

11   application.  AR 1369.  Plaintiff briefly saw two other clinicians in 2018, before he was

12   discharged at the end of the year from BHR care for failing to attend three appointments in a

13   row.  AR 1439, 1453.  He resumed care with Richards in 2019.

14        Where, as here, the ALJ finds a contradicted treating provider's opinion inconsistent with

15   the record he must provide "specific and legitimate reasons supported by substantial evidence in

16   the record for so doing."  *Lester*, 81 F.3d at 830-31 (cleaned up).  The ALJ did so here.

17        Regarding the opinion that Plaintiff would have difficulty traveling to familiar or

18   unfamiliar places or using public transportation, the ALJ found that this was contradicted by

19   evidence in the record showing that Plaintiff frequently traveled to appointments by bus.  AR

20   1646 (citing AR 351-59, 781, 794, 832, 1406, 1990).  The ALJ further found that Mr. Richard's

21   opinion that Plaintiff could not carry out one to two step instructions was contradicted by

22   Plaintiff's multiple tests showing normal memory, and that even where MSE's showed

23   impairment doctors found that "[Plaintiff] was able to manage his funds independently, a task

that would require the ability to perform more complex tasks than 1- to 2-step instructions." AR 1646. Finally, the ALJ found that "the extreme limitations assigned by Mr. Richards show that he considered himself the claimant's advocate in the pursuit of his Social Security benefits when completing this form, not as a clinician sharing his assessment of the claimant's functioning." AR 1646. The Court will not substitute its judgement for that of the ALJ. "The Commissioner's findings must be upheld if they are supported by inferences which can be reasonably drawn from the record." *Brooks v. Barnhart*, 76 F. App'x 154, 156 (9th Cir. 2003) (citing *Morgan*, 169 F.3d at 599). Accordingly, the ALJ did not err in discounting Mr. Richard's opinion.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 18th day of April, 2025.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 23